IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Marion Nursing Center, Inc. and Owens Enterprises, Inc. | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No.: 4:13-cv-2953-MGL |
| Kathleen Sebelius, in her official capacity as Secretary of the United States Department of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) ) ) | |

# ORDER

Plaintiffs Marion Nursing Center, Inc. and Owens Enterprises, Inc., ("Plaintiffs"), brought this civil action seeking a temporary retraining order, preliminary injunction, and permanent injunction to prevent the Defendant, Secretary of the United States Department of Health and Human Services, ("Defendant" or "Secretary"), from terminating Plaintiff Marion Nursing's Medicare/Medicaid provider agreements, prior to a final decision from the Secretary following an administrative hearing on the merits of such a termination. Plaintiff Marion Nursing has appealed to the U.S. Department of Health and Human Services the findings that have led to the termination action.

Before the Court is the Plaintiffs' Motion for Preliminary Injunction, as supported by a memorandum of law, a supplemental memorandum, and attached affidavits. (Docs. # 4, 8, 9, 23, 24, 25 and 27). Defendant has filed a timely response in opposition as well as a supplemental memorandum in opposition. (Docs. # 12 and 26). A hearing on the companion Motion for a

1

Temporary Restraining Order was held on short notice on October 31, 2013, with appearances by both parties. (Doc. # 13). The Court found initially that Plaintiffs met their burden under Rule 65 and granted a Temporary Restraining Order. Id. The Court simultaneously set down a hearing date for this Motion for Preliminary Injunction. Id. That hearing was held on November 7, 2013. (Doc. # 29).

## FACTUAL BACKGROUND

Plaintiff Marion Nursing is a skilled nursing facility located in Marion, South Carolina. At the time of the initiation of this litigation, Marion Nursing housed approximately 65 residents at its skilled nursing facility, a significant percentage of whom were and continue to be Medicare/ Medicaid beneficiaries. (Doc. # 1-13).

Marion Nursing participates in the Medicare program pursuant to a provider agreement with the U.S. Department of Health and Human Services Centers for Medicare and Medicaid Services ("CMS"). Marion Nursing also participates in the Medicaid program pursuant to a provider agreement with South Carolina. This lawsuit and Plaintiffs' Motion for a Preliminary Injunction arise from CMS's stated intention to terminate Marion Nursing's provider agreement effective October 26, 2013.

As a participant in the Medicare and Medicaid programs, Marion Nursing is subject to periodic on-site inspections called "surveys" by regulators pursuant to 42 U.S.C. §§ 1395i-3(g) and 1396r(g). The purpose of such surveys is to evaluate whether the facility comports with federal certification requirements so as to remain eligible to participate in the Medicare and Medicaid programs. The Secretary contracts with the South Carolina Department of Health and

Environmental Control ("DHEC") to perform these surveys in South Carolina. See 42 U.S.C. § 1395aa, 42 C.F.R. §§ 4488-10 – 488.28

Beginning as early as August of 2013, DHEC conducted a series of surveys at Marion Nursing that culminated in this litigation. Surveys completed at Marion Nursing alleged failures to satisfy federal participation requirements. (Doc. # 1-1 – 1-7). The October 3, 2013 survey found Marion Nursing to be outside substantial compliance with program requirements.

On October 11, 2013, DHEC notified Marion Nursing that the October 3 survey found that conditions of care in its facility were substandard and that three of the identified deficiencies posed "immediate jeopardy"[1] to resident health and safety. (Doc. # 1-1, p. 2). The notice advised Marion Nursing to submit an allegation of compliance and corrective action plan to abate the deficiencies. On October 18, 2013, CMS separately informed Marion Nursing that its Medicare provider agreement would be terminated on October 26, 2013, if it did not achieve substantial compliance by that date. (Doc. # 26-1, p.4). On October 22, 2013, Marion Nursing submitted its allegation of compliance and corrective action plan. DHEC acknowledged receipt of the plan, but classified it as "not accepted as written" and requested additional information. Additional materials were provided by Marion Nursing on October 22 and 24. (Doc. # 9). On October 24, 2013, CMS again notified Marion Nursing that its provider agreement would be terminated on October 26, 2013 in accordance with 42 C.F.R. § 488.456(b)(I) and 42 C.F.R. § 489.53.[2]

---

[1] "Immediate Jeopardy" is defined in the applicable federal regulations as "a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause serious injury, harm, impairment, or death to a resident." 42 C.F.R. § 488.301.

[2] 42 C.F.R. § 488.456 requires CMS to provide only two (2) calendar days notice prior to the effective date of termination for immediate jeopardy deficiencies.

On October 30, 2013, Marion Nursing formally initiated an administrative appeal of CMS's findings as set forth in the October correspondences and CMS's ultimate decision to proceed toward termination. The Plaintiffs also filed this lawsuit on October 29, 2013, seeking emergency injunctive relief to block said termination. (Doc. # 1). The Plaintiffs' Complaint seeks to preserve the status quo pending the outcome of the administrative hearing process by enjoining the Secretary from terminating Marion Nursing's provider agreements "until a final decision from the Secretary following the administrative proceedings on the merits of such termination." Id. The Plaintiffs' Complaint alleges causes of action for violation of Plaintiffs' procedural due process rights (failure to provide a pre-termination administrative hearing), violation of substantive due process (arbitrary and capricious termination of the provider agreement) and ultra vires (the Secretary exceeding her statutory authority by terminating the provider agreement without awaiting conclusion of the administrative hearing process). Id.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court . . . ." Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 345 (4th Cir. 2009), vacated on other grounds, 130 S.Ct. 2371 (2010), reissued in part, 607 F.3d 355 (4th Cir. 2010) (reissuing the portion of the earlier opinion that articulated the standard for the issuance of preliminary injunctions). A plaintiff seeking a preliminary injunction must establish: "'[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" Id. at 346 (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374 (2008)) ("Real Truth About Obama factors"). All four of these

requirements must be satisfied by a "clear showing" by the moving party that it is entitled to such relief. Id. (citing Winter, 129 S. Ct. at 374-76).

## DISCUSSION

The Court has carefully considered the arguments raised by the parties' counsel at the hearing, the memoranda, relevant case law, court documents, and exhibits filed in this case.

### A. Subject Matter Jurisdiction

Prior to an analysis and application of the four factor test for preliminary injunctive relief, the Court must first address the argument raised by the Secretary that the Court lacks subject matter jurisdiction to grant the relief requested in this case.

The leading case on the question of whether the exhaustion requirement of 42 U.S.C. § 405(g) precludes federal court jurisdiction over a due process complaint such as this is Mathews v. Eldridge, 424 U.S. 319 (1976). In Mathews, the United States Supreme Court determined that the § 405(g) exhaustion requirement is properly excused where the plaintiff's due process claim is "entirely collateral" to the substantive claim to be handled through administrative channels, so long as the plaintiff has made "a colorable claim" that an erroneous deprivation prior to exhaustion of administrative remedies would cause a harm that could not be later recompensed. 424 U.S. 330-31. The Mathews Court concluded that jurisdiction did exist for the Court to consider the constitutional due process claim advanced by the disability plaintiff in that case, given that the plaintiff's constitutional claim to a pre-deprivation hearing did not invite the court to address in any way his substantive claim of erroneous disability benefit termination, and given that the disability plaintiff was able to advance at least a colorable claim that because of his physical condition and dependency on the benefits, full relief could not be obtained through a post-deprivation hearing. Id. at 329-331;

see also, Ram v. Heckler, 792 F.2d 444, 446-47 (4th Cir. 1986) (applying Mathews to conclude that doctor-plaintiff's constitutional due process claim that he was entitled to a pre-deprivation hearing on the termination of his medicare provider status is "entirely collateral" to his substantive claim and properly reviewed by a federal court, where doctor-plaintiff showed that suspension would result in significant, non-recoverable income).

Applying these considerations to the instant case, the Court finds that the §405(g) exhaustion requirement is likewise properly excused here. Like the constitutional claims advanced by the plaintiffs in Mathews and Ram, the procedural due process claim to a pre-termination hearing advanced by Marion Nursing appears wholly collateral to its substantive claim of erroneous termination of its Medicare/Medicaid provider status, which is still properly the subject of the administrative review process. Moreover, Marion Nursing has made at least "a colorable claim" that, in light of the fact that such a significant percentage of its residents are Medicare/Medicaid recipients, an erroneous termination of its provider status prior to exhaustion of its administrative remedies would cause a degree of harm, up to an including a likelihood of permanent closure of the facility, that could not be later recompensed.

The Court therefore concludes that it does possess the requisite jurisdiction to review Plaintiffs' constitutional due process claim seeking to enjoin termination of its provider status until

such time as a pre-deprivation administrative hearing may be held.[3] The Court next turns to analysis of the factors governing the issuance of a preliminary injunction.

**B.  Substantial Likelihood of Success on the Merits**

A plaintiff seeking a preliminary injunction must establish by a "clear showing" that there is a likelihood that it will succeed on the merits. Real Truth About Obama, 575 F.3d 342, 346 (citing Winter, 129 S. Ct. at 375-76). Applying that standard to the instant case, the Plaintiffs here must establish by a clear showing that there is a likelihood that they will succeed on their procedural due process claim that they are entitled to a hearing prior to the cancellation or termination of Plaintiff Marion Nursing's Medicare/Medicaid provider agreements.

Although it is clear that Marion Nursing has a property right in its Medicare/Medicaid provider agreements, it is equally well established that property interests of this sort rarely, if ever, merit the protection of a pre-termination or pre-deprivation hearing. See, e.g., Ram v. Heckler, 792 F.2d 444, 446-47 (4th Cir. 1986) (doctor-plaintiff's protected property interest in continued participation in Medicare program is adequately protected by a hearing that occurs *after* suspension from the program); see also, Matthews v. Eldridge, 424 U.S. 319 (1976) (disability-plaintiff's protected property interest in continued disability payments is adequately protected by a post-deprivation hearing).

---

[3] To the extent that Plaintiffs' complaint advances substantive due process or ultra vires claims that allege arbitrary and capricious conduct on the part of the Secretary in the application of agency regulations, the Court is not persuaded that the Plaintiffs have made a sufficient showing to trigger the relatively narrow exception to exhaustion outlined in Mathews. In Bowen v. City of New York, 476 U.S. 467 (1986), the Supreme Court emphasized that the exhaustion requirement of § 405(g) is not to be excused in every instance of irregularity in agency proceedings or deviation from applicable regulations. The Plaintiffs in Bowen were able to make a showing of a "systemic, unrevealed policy that was inconsistent in critically important ways with established regulations." 476 U.S. at 485. Plaintiffs here have not made a comparable showing. The Court therefore concludes that Plaintiffs have not advanced a "colorable claim" of arbitrary or capricious conduct sufficient to trigger the exception to the exhaustion requirement of § 405(g) and confer jurisdiction upon this Court.

The general rule that pre-deprivation hearings are not required to satisfy procedural due process has been applied in the specific Medicare provider context of this case. See, e.g., Northlake Community Hospital v. United States, 654 F.2d 1234, 1241-43 (7th Cir. 1981) (holding that a hospital Medicare provider was not entitled to a hearing prior to termination of its provider agreements). Although the United States Supreme Court has never directly addressed the pre-termination hearing question in the context of terminating a Medicare provider, the Court has advanced persuasive dicta on the subject. In O'Bannon v. Town Court Nursing Center, the Supreme Court held that Medicaid patients were not entitled to a hearing prior to their transfer from an institution whose provider agreement had been terminated. 447 U.S. 773 (1980). In its analysis, the Court noted that "the patients... argue that they are third party beneficiaries of the provider agreement....and that this status somehow entitled them to more than [the provider] itself is entitled to -- namely, a pre-termination hearing." Id. at 785. This observation amounts to a strong suggestion by the Court that the post-termination hearing procedures provided under Medicare regulations adequately protect a Medicare provider's property interest in remaining in provider status.

Based on the foregoing authority, the Court concludes that Plaintiffs have not and cannot make the requisite "clear showing" of likelihood of success on the merits of their procedural due process claim seeking a pre-termination hearing.

**C. Balance of Harms / Public Interest**

The Court has carefully considered the remaining Real Truth About Obama factors. Although the Court is persuaded that Plaintiffs would suffer some economic harm, including, potentially, irreparable harm, in the event that injunctive relief is denied and its provider status is

terminated prior to an administrative hearing on the matter, the Court is nonetheless constrained to conclude that this factor is outweighed by the Plaintiffs' inability to show a likelihood of success on the merits. This conclusion is also informed by the Court's judgment that the Secretary has a competing interest in expeditious provider termination procedures, given both its responsibility for insuring the safety and care of the elderly and disabled Medicare patients and its goal of minimizing the expenses of administering the Medicare program. See Northlake Community Hospital, 654 F.2d at 1242. The public likewise has a strong interest in an efficient, safe and economical administration of a large public program such as Medicare.

## CONCLUSION

For all of the foregoing reasons, the Plaintiffs' Motion for a Preliminary Injunction (Doc. # 4) is **DENIED**.

**IT IS SO ORDERED**.

s/Mary G. Lewis

Mary G. Lewis
United States District Judge

November 13, 2013
Florence, South Carolina